

## NUMBER 13-09-00264-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**SAMUEL TORRES,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 107th District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza[1]
### Memorandum Opinion by Justice Rodriguez

---

[1] The Honorable Linda Reyna Yañez, former Justice of this Court, did not participate in this opinion because her term of office expired on December 31, 2010; therefore, this case, which was argued before the panel on May 26, 2010, will be decided by the two remaining justices on the panel. *See* TEX. R. APP. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").

Pursuant to a plea bargain agreement with the State, appellant Samuel Torres pleaded guilty to five counts of possession of child pornography and was sentenced to four years' confinement for each count to run concurrently. *See* TEX. PENAL CODE ANN. § 43.26 (Vernon 2003). By two issues, Torres contends that the trial court erred in denying his motion to suppress evidence because (1) the magistrate had no authority to sign the warrant, and (2) there was no probable cause. We affirm.

## I. BACKGROUND

Magistrate Valerie Garcia of the Harlingen Municipal Court issued a search warrant for Torres's residence on December 19, 2006. Attached to the search warrant is Detective Rebecca Cruz's sworn affidavit stating that a person who wished to remain anonymous had called the police department reporting that another unnamed female had informed the anonymous person that "Anna Sanchez" found sexually explicit material involving children stored on Torres's home computer and tape recordings of Torres having sex with teenage girls. Detective Cruz's affidavit states:

> IT IS THE BELIEF OF AFFIANT [Detective Cruz], AND AFFIANT HEREBY CHARGES AND ACCUSES THAT:
>
> 1. On December 16, 2006, at approximately 10:00 p.m., Detective Sergeant Steve Meyer was contacted by Patrol Sergeant Daniel Villarreal reference [sic] a call that came in regarding child pornography and sexual assault of a child.
>
> 2. A person who wished to remain anonymous called the Harlingen Police Department to provide information relating to possible offenses specified in the Texas Penal Code including Sexual Assault of a Child and Possession of Child Pornography. The source of information insisted on remaining anonymous due to fear of destroying the trust between herself and another female who provided the anonymous source with the information. The source alleges that a female named Anna Sanchez (24-25 years old) found

2

recordings in her residence of her common-law husband having sex with girls who appeared to be eleven to fifteen years of age. It is alleged that Anna Sanchez also found child pornography stored within the home computer. It is also alleged that Anna Sanchez located a journal in a room that is occupied by Anna's common law father-in-law whose name is unknown at this time. The journal details offenses of child molestation. The common law spouse of Anna was said to be a local pediatrician at the time of the first information. The anonymous caller advised Sergeant Daniel Villarreal that when Anna Sanchez viewed the Child Pornography she recognized an undetermined number of victims at that time as she went [sic] to school with them when she was younger. That is to say, Anna Sanchez recognized the girls in the video(s) as classmates from school. (*Your affiant reports to the magistrate reviewing this Search Warrant that the information contained in this affidavit was provided through third party source. Your affiant as of this time has not been able to contact with the second party or Anna Sanchez even though lengthy surveillance has been conducted at the residence since the initial call came was received in an effort to contact Anna Sanchez in person.*)

2.  On December 17, 2006, Detective Sergeant Steve Mayer and Detective Robert Gonzalez looked into this. Anna Sanchez resides with her common law spouse Samuel Torres and her common law father[-]in[-]law (unknown name) on 1909 S. Palm Ct. Drive in Harlingen, Texas. There is a black 2006 Chrysler 4-door vehicle parked in front of the residence bearing Texas license plates 884DLX. Detective Robert Gonzalez and Detective Robert Salinas conducted surveillance from noon to 6:00 p.m. The only reported activity is that Samuel Torres went outside of his residence to smoke a cigarette and he took a white heavy looking bag out of his vehicle and took it inside his residence.

3.  Samuel Torres is a Registered Nurse at Valley Baptist Medical Center. It is unknown at this time what section of the hospital Samuel is assigned to. Samuel does have a twin brother that is a pediatrician.

4.  On December 18, 2006, I received a tip from a second party alleging that Anna had been in a fight with her common law spouse Samuel Torres when she confronted him about what she found in their household. There was a knife involved and the two had a long heated argument. It is unknown if either of the two were injured. Anna was not answering her phone and there was concern for

3

Anna's well being. This second party provided me the same information that the third party had mentioned December 16, 2006. (*Your affiant reports to the magistrate reviewing this Search Warrant that the information contained in this affidavit was provided through second source. Your affiant as of this time has not been able to contact Anna Sanchez even though lengthy surveillance has been conducted at the residence since the initial call came was received in an effort to contact Anna Sanchez in person.*)

Pursuant to the warrant, the Harlingen Police Department executed a search of Torres's residence and seized computer equipment, CDs, DVDs, diskettes, VHS tapes, and digital cameras. After reviewing some of the CDs seized by police, Dr. Stanley Fisch of Harlingen Pediatrics Clinic identified seventy-two images as child pornography.[2]

After Torres was indicted with possession of child pornography, he filed a motion to suppress the evidence. Detective Cruz testified at the motion to suppress hearing that she received a call from a person who wanted to remain anonymous and who was concerned about Anna Sanchez. Detective Cruz explained that the caller stated that the caller's sister received a call from Sanchez claiming that Torres had child pornography and a "log of underaged girls that he had been having sexual contact with." According to Detective Cruz, the caller and her sister wanted police to "follow up on this welfare concern."[3] Detective Cruz testified that the anonymous caller's identity is Elizabeth Gonzalez and her sister's identity is Cynthia Flues. Detective Cruz clarified that Sanchez saw the pornographic material in Torres's possession and that neither Gonzalez

---

[2] A detailed description of each image was documented in an incident report generated by Detective Cruz. According to the report, the images included children from the ages of five or six to seventeen.

[3] On cross-examination, Detective Cruz clarified that she received two calls from two separate anonymous tipsters who "both affirmed that this is—that there was a knife involved and a heated argument . . . ."

4

nor Flues witnessed the possession of the child pornography. Detective Cruz did not speak with Sanchez.[4]

On cross-examination, Detective Cruz stated that, pursuant to the search warrant, the police seized a journal from Torres's residence. According to Detective Cruz, the tip she received was vague concerning the journal and there was nothing indicating who had written the journal. Detective Cruz stated that although the journal found in Torres's residence contained writings, it did not contain "anything illegal."

Detective Cruz claimed that she had corroborated several things that Gonzalez told her, such as Torres's address and his occupation. However, on cross-examination, Detective Cruz admitted that she did not include those facts in her affidavit. When asked by defense counsel if she "put anything in this affidavit that would have indicated to the judge that this anonymous tip was a reliable tip," Detective Cruz replied, "No, sir, I did not." On redirect examination, however, the State asked Detective Cruz to read portions of the affidavit that included Detective Cruz's corroborations that Torres was a nurse and that his twin brother was a pediatrician.

The trial court denied Torres's motion to suppress; however, it did suppress the journal found in his residence. Then, pursuant to a plea bargain agreement with the State, Torres pleaded guilty to five counts of possession of child pornography. The trial court sentenced Torres to four years' confinement for each count, with the sentences to run concurrently. *See* TEX. PENAL CODE ANN. § 43.26. This appeal ensued.

---

[4] Detective Cruz stated that her partner, J.M. Villarreal, spoke to Sanchez when she was located. According to a document in the record generated by Detective Cruz, Sanchez went to the police department on December 19, 2006 and provided a sworn statement denying that she was involved in an argument with Torres and stating that she had only seen pictures of topless adult women on Torres's computer.

5

## II. STANDARD OF REVIEW

Whether the trial court properly denied a defendant's motion to suppress is reviewed under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Scardino v. State*, 294 S.W.3d 401, 405 (Tex. App.–Corpus Christi 2009, no pet.). We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor. *Scardino*, 294 S.W.3d at 405; *see Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). When, as in this case, the trial court makes no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court's ruling. *St. George*, 237 S.W.3d at 725. We must uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). "Absent a clear abuse of discretion, the ruling on the admissibility of evidence will not be disturbed." *Fonseca v. State*, 881 S.W.2d 144, 149 (Tex. App.–Corpus Christi 1994, no pet.) (citing *Rivera v. State*, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991)).

## III. DISCUSSION

### A. Did the Magistrate Have Authority to Issue the Search Warrant?

By his first issue, Torres contends that the magistrate did not have the authority to sign an evidentiary search warrant under article 18.02(10) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 18.02(10) (Vernon 2005). The State concedes that the magistrate who issued the search warrant in this case was not a court

6

of record, and therefore, it did not have the authority to issue an evidentiary search warrant pursuant to article 18.02(10). *See id.* However, the State asserts that the search warrant was not an evidentiary search warrant and that the magistrate had the authority to issue the search warrant pursuant to articles 18.02(8) and 18.02(9). *See id.* art. 18.02(8)-(9) (Vernon 2005).

## 1. Applicable Law

A "search warrant" is a written order issued by a magistrate commanding a peace officer to search for and seize certain items. *Id.* art. 18.01(a) (Vernon Supp. 2010). Article 18.02 of the Texas Code of Criminal Procedure lists the items that may be included in a search warrant. *Id.* art. 18.02 (Vernon 2005); *Mullican v. State*, 157 S.W.3d 870, 872 (Tex. App.–Fort Worth 2005, pet. ref'd) ("Search warrants may issue for any of the nine items listed in sections one through nine of article 18.02."). Article 18.02(8) allows a search warrant to be issued for "any property the possession of which is prohibited by law." TEX. CODE CRIM. PROC. ANN. art. 18.02(8). Article 18.02(9) provides for the search and seizure of the "implements or instruments used in the commission of a crime." *Id.* art. 18.02(9). Subsection ten of article 18.02 allows a search warrant, referred to as an "evidentiary warrant," to be issued for items not listed in subsections one through nine. *Scott v. State*, 868 S.W.2d 430, 432 (Tex. App.–Waco 1994, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 18.02(10). In other words, subsection ten is a "catch-all section" that only applies when the other sections do not. *State v. Young*, 8 S.W.3d 695, 698 (Tex. App.–Fort Worth 1999, no pet.). Importantly, "[o]nly judges of municipal courts of record licensed as attorneys, statutory county or district judges, or judges from the Court

7

of Criminal Appeals or Supreme Court may issue evidentiary warrants under article 18.02(10)." *Scott*, 868 S.W.2d at 432; *see Zarychta v. State*, 44 S.W.3d 155, 164 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 18.02(10). A search warrant is considered an "evidentiary warrant" only if it is issued pursuant to subsection ten. *See Young*, 8 S.W.3d at 698 (concluding that the search warrant was not an evidentiary warrant because it had been properly issued pursuant to article 18.02(9)).

## 2. Analysis

In this case, both sides agree that the magistrate was not a court of record and did not have the authority to issue an evidentiary search warrant. Therefore, we can affirm the trial court's denial of Torres's motion to suppress only if the search warrant was authorized under subsection one through nine of article 18.02.

Possession of child pornography is prohibited by law. TEX. PENAL CODE ANN. § 43.26. And although possession of computers, floppy disks, and CDs is not prohibited by law, images of child pornography that they store, if any, are illegal; thus, a warrant under article 18.02(8) may be properly issued. *See Elardo v. State*, 163 S.W.3d 760, 771 (Tex. App.–Texarkana 2005, pet. ref'd) (concluding that, because the images of child pornography stored on the computers, floppy disks, and CDs are illegal, the warrant issued for the property was not an evidentiary warrant but was properly issued under article 18.02(8)); *Mullican*, 157 S.W.3d at 873 (stating that pornographic photographs seized from appellant's computer "constituted 'property the possession of which is prohibited by law,' which may be the subject of a warrant issued under article 18.02(8)");

8

*see also* TEX. CODE CRIM. PROC. ANN. art. 18.02(8). Furthermore, the items in this case that were identified in Detective Cruz's affidavit and sought in the search warrant—items capable of storing images of child pornography—could be implements or instruments used in the commission of a crime. *See* TEX. CODE CRIM. PROC. ANN. art. 18.02(9).

Detective Cruz stated in her affidavit that she received a tip that Torres had child pornography "stored within the home computer" and "recordings" of Torres having sex with young girls. Detective Cruz also stated that it was her belief that Torres was in possession of and was concealing "documentation, evidence or instruments of a crime pertaining to the aforesaid offense [child pornography] that may be discovered and seized by Affiant and/or representatives of the Harlingen Police Department . . . ." Detective Cruz believed Torres possessed and was concealing at his residence in violation of the laws of Texas the following items: (1) computer hardware consisting of equipment capable of collecting and storing data; (2) computer software defined as digital information that can be interpreted by a computer and is stored in electronic, magnetic, optical, or other digital form; (3) computer related documents such as "written, recorded, printer, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items"; and (4) "[c]omputer passwords and other data security devices which are designed to restrict access to or hide computer software, documentation, or data."

From the information provided in the affidavit, the magistrate could have concluded that the items sought—including, among other things, computer hardware, computer software, and related documents that stored child pornography—were items,

9

the possession of which is prohibited by law, or were implements or instruments used in the commission of the crime of possession of child pornography. *See* Tex. Code Crim. Proc. Ann. art. 18.02(8), 18.02(9). Accordingly, we conclude that the magistrate issued the search warrant pursuant to subsections eight and nine; thus, the warrant was not an evidentiary search warrant pursuant to subsection ten. *See id.* art. 18.02(10); *Young*, 8 S.W.3d at 698; *Scott*, 868 S.W.2d at 432; *see also Elardo*, 163 S.W.3d at 771. Because we conclude that the search warrant in this case was not an evidentiary search warrant, the magistrate had the authority to issue it. *See Elardo*, 163 S.W.3d at 771; *Mullican*, 157 S.W.3d at 873. Therefore, the trial court did not abuse its discretion by concluding that the magistrate had the authority to issue the warrant. We overrule all arguments in Torres's first issue addressing the magistrate's authority to issue the warrant.

## B. Was There Probable Cause to Issue the Warrant?

By a sub-issue in his first issue and by his second issue, Torres contends that there was no probable cause to issue the warrant in this case. Specifically, Torres argues that the affidavit contains double hearsay and that the trial court failed to analyze whether each level of hearsay was reliable.

### 1. Applicable Law

In Texas, a warrant must be supported by a sworn affidavit with sufficient facts that probable cause exists for the warrant's issuance. Tex. Code Crim. Proc. Ann. art. 18.01(b) (Vernon Supp. 2010). Moreover, the Fourth Amendment requires that a magistrate find probable cause to believe that a particular item will be found at a particular location before it may issue a search warrant. *Rodriguez v. State*, 232 S.W.3d 55, 60

10

(Tex. Crim. App. 2007). "Probable cause exists if, under the totality of the circumstances presented to the magistrate, there is at least a 'fair probability' or 'substantial chance' that contraband or evidence of a crime will be found at the specified location." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13 (1983)).

We determine whether there is probable cause to support the issuance of the warrant from the "four corners" of the affidavit alone. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004); *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.–Waco 2000, pet. ref'd). "We do not engage in a de novo review of the affidavit's sufficiency." *Ashcraft v. State*, 934 S.W.2d 727, 733 (Tex. App.–Corpus Christi 1996, pet. ref'd); *see also Athey v. State*, No. 13-06-129-CR, 2007 Tex. App. LEXIS 6739, *11 (Tex. App.–Corpus Christi 2007, no pet.) (mem. op., not designated for publication) ("Rather than applying a de novo review of a magistrate's probable cause finding, which is a question of law, we must pay great deference to a magistrate's finding of probable cause 'to encourage police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by invoking some exception to the warrant requirement.'"). The proper standard of review requires us to affirm the magistrate's decision to issue the warrant if the affidavit demonstrates a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Swearingen v. State*, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004). We give great deference to the magistrate's determination of probable cause. *Id.* at 811 (providing that a magistrate's determination to issue a search warrant is subject to the deferential standard of review articulated in *Gates*—requiring a deferential standard of review of a magistrate's

11

determination that an affidavit is sufficient rather than a de novo review). "If in a particular case it may not be easy to determine whether an affidavit demonstrates the existence of probable cause, the resolution of such doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *State v. Walker*, 140 S.W.3d 761, 765 (Tex. App.–Houston [14th Dist.] 2004, no pet.) (citing *Lopez v. State*, 535 S.W.2d 643, 647 (Tex. Crim. App. 1976)).

We must interpret the affidavit in a commonsensical and realistic manner and recognize that the magistrate is permitted to draw reasonable inferences from facts and circumstances alleged in the affidavit. *Rodriguez*, 232 S.W.3d at 61. We should not invalidate search warrants by interpreting affidavits in a hyper-technical manner. *Id.* at 59.

> The duty of a reviewing court, including a reviewing trial court, is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. at 238. This "substantial basis" standard of review "does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review." W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.7(c) at 452 (4th ed. 2004 & Supp. 2009-2010) (internal punctuation omitted) (citing cases).

*Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). When viewing the affidavit, hearsay-upon-hearsay will support issuance of a warrant "as long as the underlying circumstances indicate that there is a substantial basis for crediting the hearsay at each level." *Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983); *see also Gish v. State*, 606 S.W.2d 883, 886 (Tex. Crim. App. 1980) (determining that observations reported to the affiant by other officers engaged in investigation can

12

constitute reliable basis for issuing a warrant).

**2. Analysis**

Here, the magistrate could have determined from within the four corners of the affidavit that: (1) Detective Cruz had been a police officer for six years and had training in the law of search and seizure including the "authoring of search warrants"; (2) Torres lived with Sanchez in the home described in the search warrant; (3) a person called police and informed them that Sanchez had witnessed that Torres possessed child pornography; (4) a second person concerned with Sanchez's well-being called police; (5) the second person informed police that Sanchez said that she and Torres were in an altercation involving a knife; (6) the second person stated that Sanchez was "frantic" when she told the second caller about the altercation; (7) the second person explained that the altercation occurred after Sanchez "confronted" Torres about the child pornography; (8) Sanchez told both of the callers that she had observed child pornography on Torres's computer files and had found video tapes containing child pornography; and (9) the second person stated that since Sanchez told her about the altercation, Sanchez was not answering her phone. Furthermore, from the information provided in the affidavit, the magistrate could have reasonably inferred that: (1) Sanchez may have been in a dangerous situation; (2) the second person did not wish for her name to appear on the affidavit for fear of retribution; (3) the callers were citizens who were concerned with the safety and well-being of Sanchez; (4) both callers knew Sanchez; (5) the second caller was Sanchez's friend; (6) the second caller had some familiarity with Sanchez's affairs; (7) Sanchez had familiarity with Torres's affairs; and (8) the callers had

13

some familiarity with Torres's affairs.

Although the affidavit in this case stated the callers were anonymous, it was reasonable for the magistrate to infer that these particular callers were concerned citizens performing their civic duty of reporting what they considered a potentially dangerous situation. Furthermore, at the suppression hearing, Detective Cruz testified that both callers were actually known to her and that although their names were not included in the affidavit, "everything" had been explained to the magistrate concerning why the names were not included in the affidavit.

We conclude that, in this case, although the affidavit described the two callers as being anonymous, they were actually concerned citizens who could be held accountable for their actions.[5] Accordingly, because both callers' identities were easily ascertainable, the callers' reports in this case exhibited "heightened indicia of reliability." *See Mitchell v. State*, 187 S.W.3d 113, 117-18 (Tex. App.–Waco 2006, pet. ref'd); *State v. Stolte*, 991 S.W.2d 336, 341 (Tex. App.–Fort Worth 1999, no pet.); *see also Martinez v. State*, 318 S.W.3d 24, 28 (Tex. App.–San Antonio 2009, pet. granted) (explaining that a tipster is not considered anonymous if that person can be held accountable for the information provided and the information provided is "inherently" reliable); *Bilyeu v. State*, 136 S.W.3d 691, 696 (Tex. App.–Texarkana 2004, no pet.) (providing that the information provided by a person whose identity was easily ascertained was "significantly more reliable than a

---

[5] *Cf. Flores v. State*, 287 S.W.3d 307, 312 (Tex. App.–Austin, 2009), *aff'd*, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010) (stating that information provided to the police by an anonymous informant "must contain some indicia of reliability or be reasonably corroborated by the police before it can be used to justify a search. The information corroborated must provide a substantial basis for crediting the informer's hearsay; corroboration of details that are easily obtainable at the time the information is provided will not support a finding of probable cause").

simple anonymous telephone call").[6]  Therefore, because the reports to police were given by sources that exhibited heightened indicia of reliability, there was a substantial basis for the magistrate to conclude that a search would uncover evidence of wrongdoing, despite the double hearsay.

Giving great deference to the magistrate's determination, we conclude that under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant.  *See Swearingen*, 143 S.W.3d at 811; *Walker*, 140 S.W.3d at 765.  Therefore, the trial court did not abuse its discretion by denying Torres's motion to suppress.  We overrule Torres's second issue and the sub-issue in his first issue that addresses probable cause.

### IV.  CONCLUSION

We affirm the trial court's denial of Torres's motion to suppress.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 27th
day of January, 2011.

---

[6] *But see Elardo v. State*, 163 S.W.3d 760, 771-72 (Tex. App.–Texarkana 2005, pet. ref'd) (concluding that even if the magistrate could infer that the anonymous tipster was a family member or friend, there were insufficient facts to find that the tipster was merely a private citizen who could be held accountable for his report).