NUMBER 13-09-00264-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

SAMUEL TORRES,                                                    
          Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                            Appellee.

                                                                                                                     
  

 

On appeal from the 107th
District Court 

of Cameron County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices Yañez,
Rodriguez, and Garza[1] 


Memorandum Opinion by
Justice Rodriguez

                                                                                                                                    

 

Pursuant to a plea bargain agreement
with the State, appellant Samuel Torres pleaded guilty to five counts of
possession of child pornography and was sentenced to four years’ confinement
for each count to run concurrently.  See Tex. Penal Code Ann. § 43.26 (Vernon 2003).  By two issues,
Torres contends that the trial court erred in denying his motion to suppress
evidence because (1) the magistrate had no authority to sign the warrant, and
(2) there was no probable cause.  We affirm.

I.  Background

            Magistrate Valerie Garcia of the Harlingen
Municipal Court issued a search warrant for Torres’s residence on December 19,
2006.  Attached to the search warrant is Detective Rebecca Cruz’s sworn
affidavit stating that a person who wished to remain anonymous had called the
police department reporting that another unnamed female had informed the
anonymous person that “Anna Sanchez” found sexually explicit material involving
children stored on Torres’s home computer and tape recordings of Torres having
sex with teenage girls.  Detective Cruz’s affidavit states:

IT IS THE BELIEF OF AFFIANT [Detective Cruz], AND AFFIANT
HEREBY CHARGES AND ACCUSES THAT:

 

1.         On December 16, 2006, at approximately 10:00 p.m.,
Detective Sergeant Steve Meyer was contacted by Patrol Sergeant Daniel
Villarreal reference [sic] a call that came in regarding child pornography and
sexual assault of a child.

 

2.         A person who wished to remain anonymous called the
Harlingen Police Department to provide information relating to possible
offenses specified in the Texas Penal Code including Sexual Assault of a Child
and Possession of Child Pornography.  The source of information insisted on
remaining anonymous due to fear of destroying the trust between herself and
another female who provided the anonymous source with the information.  The
source alleges that a female named Anna Sanchez (24-25 years old) found
recordings in her residence of her common-law husband having sex with girls who
appeared to be eleven to fifteen years of age.  It is alleged that Anna Sanchez
also found child pornography stored within the home computer.  It is also
alleged that Anna Sanchez located a journal in a room that is occupied by
Anna’s common law father-in-law whose name is unknown at this time.  The
journal details offenses of child molestation.  The common law spouse of Anna
was said to be a local pediatrician at the time of the first information.  The
anonymous caller advised Sergeant Daniel Villarreal that when Anna Sanchez
viewed the Child Pornography she recognized an undetermined number of victims
at that time as she went [sic] to school with them when she was younger.  That
is to say, Anna Sanchez recognized the girls in the video(s) as classmates from
school.  (Your affiant reports to the magistrate reviewing this Search
Warrant that the information contained in this affidavit was provided through
third party source.  Your affiant as of this time has not been able to contact
with the second party or Anna Sanchez even though lengthy surveillance has been
conducted at the residence since the initial call came was received in an
effort to contact Anna Sanchez in person.)



2.         On December 17, 2006, Detective Sergeant Steve Mayer
and Detective Robert Gonzalez looked into this.  Anna Sanchez resides with her
common law spouse Samuel Torres and her common law father[-]in[-]law (unknown
name) on 1909 S. Palm Ct. Drive in Harlingen, Texas.  There is a black 2006
Chrysler 4-door vehicle parked in front of the residence bearing Texas license
plates 884DLX.  Detective Robert Gonzalez and Detective Robert Salinas
conducted surveillance from noon to 6:00 p.m.  The only reported activity is
that Samuel Torres went outside of his residence to smoke a cigarette and he
took a white heavy looking bag out of his vehicle and took it inside his
residence.

 

3.         Samuel Torres is a Registered Nurse at Valley
Baptist Medical Center.  It is unknown at this time what section of the
hospital Samuel is assigned to.  Samuel does have a twin brother that is a
pediatrician.

 

4.         On December 18, 2006, I received a tip from a second
party alleging that Anna had been in a fight with her common law spouse Samuel
Torres when she confronted him about what she found in their household.  There
was a knife involved and the two had a long heated argument.  It is unknown if
either of the two were injured.  Anna was not answering her phone and there was
concern for Anna’s well being.  This second party provided me the same
information that the third party had mentioned December 16, 2006.  (Your
affiant reports to the magistrate reviewing this Search Warrant that the
information contained in this affidavit was provided through second source. 
Your affiant as of this time has not been able to contact Anna Sanchez even
though lengthy surveillance has been conducted at the residence since the
initial call came was received in an effort to contact Anna Sanchez in person.)

 

Pursuant to the warrant, the Harlingen Police Department
executed a search of Torres’s residence and seized computer equipment, CDs,
DVDs, diskettes, VHS tapes, and digital cameras.  After reviewing some of the
CDs seized by police, Dr. Stanley Fisch of Harlingen Pediatrics Clinic
identified seventy-two images as child pornography.[2]

            After Torres was indicted with possession of
child pornography, he filed a motion to suppress the evidence.  Detective Cruz
testified at the motion to suppress hearing that she received a call from a
person who wanted to remain anonymous and who was concerned about Anna
Sanchez.  Detective Cruz explained that the caller stated that the caller’s
sister received a call from Sanchez claiming that Torres had child pornography
and a “log of underaged girls that he had been having sexual contact with.” 
According to Detective Cruz, the caller and her sister wanted police to “follow
up on this welfare concern.”[3] 
Detective Cruz testified that the anonymous caller’s identity is Elizabeth
Gonzalez and her sister’s identity is Cynthia Flues.  Detective Cruz clarified
that Sanchez saw the pornographic material in Torres’s possession and that
neither Gonzalez nor Flues witnessed the possession of the child pornography. 
Detective Cruz did not speak with Sanchez.[4]

            On cross-examination, Detective Cruz stated
that, pursuant to the search warrant, the police seized a journal from Torres’s
residence.  According to Detective Cruz, the tip she received was vague
concerning the journal and there was nothing indicating who had written the
journal.  Detective Cruz stated that although the journal found in Torres’s
residence contained writings, it did not contain “anything illegal.”

            Detective Cruz claimed that she had
corroborated several things that Gonzalez told her, such as Torres’s address
and his occupation.  However, on cross-examination, Detective Cruz admitted
that she did not include those facts in her affidavit.  When asked by defense
counsel if she “put anything in this affidavit that would have indicated to the
judge that this anonymous tip was a reliable tip,” Detective Cruz replied, “No,
sir, I did not.”  On redirect examination, however, the State asked Detective
Cruz to read portions of the affidavit that included Detective Cruz's
corroborations that Torres was a nurse and that his twin brother was a
pediatrician.

            The trial court denied Torres’s motion to
suppress; however, it did suppress the journal found in his residence.  Then,
pursuant to a plea bargain agreement with the State, Torres pleaded guilty to
five counts of possession of child pornography.  The trial court sentenced Torres
to four years’ confinement for each count, with the sentences to run
concurrently.  See Tex. Penal
Code Ann. § 43.26.  This appeal ensued.

II.  Standard of Review

            Whether
the trial court properly denied a defendant’s motion to suppress is reviewed
under a bifurcated standard of review.  St. George v. State, 237 S.W.3d
720, 725 (Tex. Crim. App. 2007); Scardino v. State, 294 S.W.3d 401, 405
(Tex. App.–Corpus Christi 2009, no pet.).  We give almost total deference to
the trial court’s determination of historical facts and review de novo the
trial court’s application of law to facts not turning on credibility and demeanor. 
Scardino, 294 S.W.3d at 405; see Ford v. State, 158 S.W.3d 488,
493 (Tex. Crim. App. 2005).  When, as in this case, the trial court makes no
explicit findings of historical fact, the evidence must be viewed in the light
most favorable to the trial court’s ruling.  St. George, 237 S.W.3d at
725.  We must uphold the trial court’s ruling if it is correct under any theory
of law applicable to the case.  State v. Dixon, 206 S.W.3d 587, 590
(Tex. Crim. App. 2006); Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005).  “Absent a clear abuse of discretion, the ruling on the
admissibility of evidence will not be disturbed.”  Fonseca v. State, 881
S.W.2d 144, 149 (Tex. App.–Corpus Christi 1994, no pet.) (citing Rivera v.
State, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991)).

III.  Discussion

A.    Did
the Magistrate Have Authority to Issue the Search Warrant?

            By his first issue, Torres contends that the
magistrate did not have the authority to sign an evidentiary search warrant
under article 18.02(10) of the code of criminal procedure.  See Tex. Code Crim. Proc. Ann. art.
18.02(10) (Vernon 2005).  The State concedes that the magistrate who issued the
search warrant in this case was not a court of record, and therefore, it did
not have the authority to issue an evidentiary search warrant pursuant to
article 18.02(10).  See id.  However, the State asserts that the search
warrant was not an evidentiary search warrant and that the magistrate had the
authority to issue the search warrant pursuant to articles 18.02(8) and
18.02(9).  See id. art. 18.02(8)-(9) (Vernon 2005).

1.  Applicable Law

            A “search warrant” is a written order issued
by a magistrate commanding a peace officer to search for and seize certain
items.  Id. art. 18.01(a) (Vernon Supp. 2010).  Article 18.02 of the
Texas Code of Criminal Procedure lists the items that may be included in a
search warrant.  Id. art. 18.02 (Vernon 2005); Mullican v. State,
157 S.W.3d 870, 872 (Tex. App.–Fort Worth 2005, pet. ref’d) (“Search warrants
may issue for any of the nine items listed in sections one through nine of
article 18.02.”).  Article 18.02(8) allows a search warrant to be issued for “any
property the possession of which is prohibited by law.”  Tex. Code Crim. Proc. Ann. art. 18.02(8). 
Article 18.02(9) provides for the search and seizure of the “implements or
instruments used in the commission of a crime.”  Id. art. 18.02(9). 
Subsection ten of article 18.02 allows a search warrant, referred to as an “evidentiary
warrant,” to be issued for items not listed in subsections one through nine.  Scott
v. State, 868 S.W.2d 430, 432 (Tex. App.–Waco 1994, pet. ref’d); see
Tex. Code Crim. Proc. Ann. art.
18.02(10).  In other words, subsection ten is a “catch-all section” that only
applies when the other sections do not.  State v. Young, 8 S.W.3d 695,
698 (Tex. App.–Fort Worth 1999, no pet.).  Importantly, “[o]nly judges of
municipal courts of record licensed as attorneys, statutory county or district
judges, or judges from the Court of Criminal Appeals or Supreme Court may issue
evidentiary warrants under article 18.02(10).”  Scott, 868 S.W.2d at
432; see Zarychta v. State, 44 S.W.3d 155, 164 (Tex. App.–Houston [14th
Dist.] 2001, pet. ref’d); see also Tex.
Code Crim. Proc. Ann. art. 18.02(10).  A search warrant is considered an
“evidentiary warrant” only if it is issued pursuant to subsection ten.  See
Young, 8 S.W.3d at 698 (concluding that the search warrant was not an
evidentiary warrant because it had been properly issued pursuant to article
18.02(9)).

2.  Analysis

            In this case, both sides agree that the
magistrate was not a court of record and did not have the authority to issue an
evidentiary search warrant.  Therefore, we can affirm the trial court’s denial
of Torres’s motion to suppress only if the search warrant was authorized under
subsection one through nine of article 18.02.

            Possession of child pornography is prohibited
by law.  Tex. Penal Code Ann. §
43.26.  And although possession of computers, floppy disks, and CDs is not
prohibited by law, images of child pornography that they store, if any, are
illegal; thus, a warrant under article 18.02(8) may be properly issued.  See
Elardo v. State, 163 S.W.3d 760, 771 (Tex. App.–Texarkana 2005, pet. ref’d)
(concluding that, because the images of child pornography stored on the
computers, floppy disks, and CDs are illegal, the warrant issued for the
property was not an evidentiary warrant but was properly issued under article
18.02(8)); Mullican, 157 S.W.3d at 873 (stating that pornographic
photographs seized from appellant’s computer “constituted ‘property the
possession of which is prohibited by law,’ which may be the subject of a
warrant issued under article 18.02(8)”);  see also Tex. Code Crim. Proc. Ann. art.
18.02(8).  Furthermore, the items in this case that were identified in
Detective Cruz’s affidavit and sought in the search warrant—items capable of
storing images of child pornography—could be implements or instruments used in
the commission of a crime.  See Tex.
Code Crim. Proc. Ann. art. 18.02(9).

Detective Cruz stated in her affidavit
that she received a tip that Torres had child pornography “stored within the
home computer” and “recordings” of Torres having sex with young girls. 
Detective Cruz also stated that it was her belief that Torres was in possession
of and was concealing “documentation, evidence or instruments of a crime
pertaining to the aforesaid offense [child pornography] that may be discovered
and seized by Affiant and/or representatives of the Harlingen Police Department
. . . .”  Detective Cruz believed Torres possessed and was concealing at his residence
in violation of the laws of Texas the following items:  (1) computer hardware
consisting of equipment capable of collecting and storing data; (2) computer
software defined as digital information that can be interpreted by a computer
and is stored in electronic, magnetic, optical, or other digital form; (3)
computer related documents such as “written, recorded, printer, or
electronically stored material which explains or illustrates how to configure
or use computer hardware, software, or other related items”; and (4)
“[c]omputer passwords and other data security devices which are designed to
restrict access to or hide computer software, documentation, or data.”

From the information provided in the
affidavit, the magistrate could have concluded that the items sought—including,
among other things, computer hardware, computer software, and related documents
that stored child pornography—were items, the possession of which is
prohibited by law, or were implements or instruments used in the commission of the
crime of possession of child pornography.  See Tex. Code Crim. Proc. Ann. art. 18.02(8), 18.02(9).  Accordingly,
we conclude that the magistrate issued the search warrant pursuant to
subsections eight and nine; thus, the warrant was not an evidentiary search warrant
pursuant to subsection ten.  See id. art. 18.02(10); Young, 8
S.W.3d at 698; Scott, 868 S.W.2d at 432; see also Elardo,
163 S.W.3d at 771.  Because we conclude that the search warrant in this case
was not an evidentiary search warrant, the magistrate had the authority to
issue it.  See Elardo, 163 S.W.3d at 771; Mullican, 157 S.W.3d at
873.  Therefore, the trial court did not abuse its discretion by concluding
that the magistrate had the authority to issue the warrant.  We overrule all
arguments in Torres’s first issue addressing the magistrate’s authority to
issue the warrant.

B.  Was
There Probable Cause to Issue the Warrant?

                By a sub-issue in his first issue and by
his second issue, Torres contends that there was no probable cause to issue the
warrant in this case.  Specifically, Torres argues that the affidavit contains
double hearsay and that the trial court failed to analyze whether each level of
hearsay was reliable.

1.  Applicable Law

            In Texas, a warrant must be supported by a
sworn affidavit with sufficient facts that probable cause exists for the
warrant’s issuance.  Tex. Code Crim.
Proc. Ann. art. 18.01(b) (Vernon Supp. 2010).  Moreover, the Fourth
Amendment requires that a magistrate find probable cause to believe that a
particular item will be found at a particular location before it may issue a
search warrant.  Rodriguez v. State, 232 S.W.3d 55, 60 (Tex. Crim. App.
2007).  “Probable cause exists if, under the totality of the circumstances
presented to the magistrate, there is at least a ‘fair probability’ or
‘substantial chance’ that contraband or evidence of a crime will be found at
the specified location.”  Id. (citing Illinois v. Gates, 462 U.S.
213, 238, 243 n.13 (1983)).

            We determine whether there is probable cause
to support the issuance of the warrant from the “four corners” of the affidavit
alone.  Hankins v. State, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004); Burke
v. State, 27 S.W.3d 651, 654 (Tex. App.–Waco 2000, pet. ref’d).  “We do not
engage in a de novo review of the affidavit’s sufficiency.”  Ashcraft v.
State, 934 S.W.2d 727, 733 (Tex. App.–Corpus Christi 1996, pet. ref’d); see
also Athey v. State, No. 13-06-129-CR, 2007 Tex. App. LEXIS 6739, *11 (Tex.
App.–Corpus Christi 2007, no pet.) (mem. op., not designated for publication)
(“Rather than applying a de novo review of a magistrate’s probable cause
finding, which is a question of law, we must pay great deference to a
magistrate’s finding of probable cause ‘to encourage police officers to use the
warrant process rather than making a warrantless search and later attempting to
justify their actions by invoking some exception to the warrant
requirement.’”).  The proper standard of review requires us to affirm the
magistrate’s decision to issue the warrant if the affidavit demonstrates a
substantial basis for concluding that a search would uncover evidence of wrongdoing. 
Swearingen v. State, 143 S.W.3d 808, 810 (Tex. Crim. App. 2004).  We
give great deference to the magistrate’s determination of probable cause.  Id.
at 811 (providing that a magistrate’s determination to issue a search warrant
is subject to the deferential standard of review articulated in Gates—requiring
a deferential standard of review of a magistrate’s determination that an
affidavit is sufficient rather than a de novo review).  “If in a particular
case it may not be easy to determine whether an affidavit demonstrates the
existence of probable cause, the resolution of such doubtful or marginal cases
should be largely determined by the preference to be accorded warrants.”  State
v. Walker, 140 S.W.3d 761, 765 (Tex. App.–Houston [14th Dist.] 2004, no
pet.) (citing Lopez v. State, 535 S.W.2d 643, 647 (Tex. Crim. App.
1976)).

            We must interpret the affidavit in a
commonsensical and realistic manner and recognize that the magistrate is
permitted to draw reasonable inferences from facts and circumstances alleged in
the affidavit.  Rodriguez, 232 S.W.3d at 61.  We should not invalidate
search warrants by interpreting affidavits in a hyper-technical manner.  Id.
at 59.

The duty of a reviewing court, including a reviewing
trial court, is simply to ensure that the magistrate had a substantial basis
for concluding that probable cause existed.  Illinois v. Gates, 462 U.S.
at 238.  This “substantial basis” standard of review “does not mean the
reviewing court should be a rubber stamp but does mean that the magistrate’s
decision should carry the day in doubtful or marginal cases, even if the
reviewing court might reach a different result upon de novo review.” W. LaFave,
Search and Seizure: A Treatise on the Fourth Amendment § 11.7(c) at 452 (4th
ed. 2004 & Supp. 2009-2010) (internal punctuation omitted) (citing cases).

 

Flores v. State, 319 S.W.3d 697, 702 (Tex.
Crim. App. 2010).  When viewing the affidavit, hearsay-upon-hearsay will
support issuance of a warrant “as long as the underlying circumstances indicate
that there is a substantial basis for crediting the hearsay at each level.”  Hennessy
v. State, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983); see also Gish v.
State, 606 S.W.2d 883, 886 (Tex. Crim. App. 1980) (determining that
observations reported to the affiant by other officers engaged in investigation
can constitute reliable basis for issuing a warrant).

2.  Analysis

            Here, the magistrate could have determined
from within the four corners of the affidavit that:  (1) Detective Cruz had
been a police officer for six years and had training in the law of search and
seizure including the “authoring of search warrants”; (2) Torres lived with
Sanchez in the home described in the search warrant; (3) a person called police
and informed them that Sanchez had witnessed that Torres possessed child
pornography; (4) a second person concerned with Sanchez’s well-being called
police; (5) the second person informed police that Sanchez said that she and
Torres were in an altercation involving a knife; (6) the second person stated
that Sanchez was “frantic” when she told the second caller about the
altercation; (7) the second person explained that the altercation occurred
after Sanchez “confronted” Torres about the child pornography; (8) Sanchez told
both of the callers that she had observed child pornography on Torres’s
computer files and had found video tapes containing child pornography; and (9)
the second person stated that since Sanchez told her about the altercation,
Sanchez was not answering her phone.  Furthermore, from the information
provided in the affidavit, the magistrate could have reasonably inferred that: 
(1) Sanchez may have been in a dangerous situation; (2) the second person did
not wish for her name to appear on the affidavit for fear of retribution; (3)
the callers were citizens who were concerned with the safety and well-being of
Sanchez; (4) both callers knew Sanchez; (5) the second caller was Sanchez’s
friend; (6) the second caller had some familiarity with Sanchez’s affairs; (7)
Sanchez had familiarity with Torres’s affairs; and (8) the callers had some
familiarity with Torres’s affairs.

Although the affidavit in this case
stated the callers were anonymous, it was reasonable for the magistrate to
infer that these particular callers were concerned citizens performing their
civic duty of reporting what they considered a potentially dangerous
situation.  Furthermore, at the suppression hearing, Detective Cruz testified
that both callers were actually known to her and that although their names were
not included in the affidavit, “everything” had been explained to the
magistrate concerning why the names were not included in the affidavit.

            We conclude that, in this case, although the
affidavit described the two callers as being anonymous, they were actually
concerned citizens who could be held accountable for their actions.[5] 
Accordingly, because both callers’ identities were easily ascertainable, the
callers’ reports in this case exhibited “heightened indicia of reliability.”  See
Mitchell v. State, 187 S.W.3d 113, 117-18 (Tex. App.–Waco 2006, pet.
ref’d); State v. Stolte, 991 S.W.2d 336, 341 (Tex. App.–Fort Worth 1999,
no pet.); see also Martinez v. State, 318 S.W.3d 24, 28 (Tex. App.–San
Antonio 2009, pet. granted) (explaining that a tipster is not considered
anonymous if that person can be held accountable for the information provided
and the information provided is “inherently” reliable); Bilyeu v. State,
136 S.W.3d 691, 696 (Tex. App.–Texarkana 2004, no pet.) (providing that the
information provided by a person whose identity was easily ascertained was
“significantly more reliable than a simple anonymous telephone call”).[6] 
Therefore, because the reports to police were given by sources that exhibited
heightened indicia of reliability, there was a substantial basis for the
magistrate to conclude that a search would uncover evidence of wrongdoing,
despite the double hearsay.

Giving great deference to the magistrate’s
determination, we conclude that under the totality of the circumstances, the
magistrate had a substantial basis for concluding that probable cause existed
to issue the search warrant.  See Swearingen, 143 S.W.3d at 811; Walker,
140 S.W.3d at 765.  Therefore, the trial court did not abuse its discretion by
denying Torres’s motion to suppress.  We overrule Torres’s second issue and the
sub-issue in his first issue that addresses probable cause.

IV.  Conclusion

            We affirm the trial court’s denial of
Torres’s motion to suppress.

 

                                                                                         NELDA
V. RODRIGUEZ

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 27th 

day of January, 2011.

                                                                                                                                                            









[1]
The Honorable Linda Reyna Yañez,
former Justice of this Court, did not participate in this opinion because her
term of office expired on December 31, 2010; therefore, this case, which was
argued before the panel on May 26, 2010, will be decided by the two remaining
justices on the panel.  See Tex.
R. App. P. 41.1(b) (“After argument, if for any reason a member of the
panel cannot participate in deciding a case, the case may be decided by the two
remaining justices.”).





[2]
A detailed description of each image was documented in an incident report
generated by Detective Cruz.  According to the report, the images included
children from the ages of five or six to seventeen.





[3]
On cross-examination, Detective Cruz clarified that she received two calls from
two separate anonymous tipsters who “both affirmed that this is—that there was
a knife involved and a heated argument . . . . ”





[4]
Detective Cruz stated that her partner, J.M. Villarreal, spoke to Sanchez when
she was located.  According to a document in the record generated by Detective
Cruz, Sanchez went to the police department on December 19, 2006 and provided a
sworn statement denying that she was involved in an argument with Torres and
stating that she had only seen pictures of topless adult women on Torres’s computer.





[5]
Cf. Flores v. State, 287 S.W.3d 307, 312 (Tex. App.–Austin, 2009), aff’d,
319 S.W.3d 697, 703 (Tex. Crim. App. 2010) (stating that information provided
to the police by an anonymous informant “must contain some indicia of
reliability or be reasonably corroborated by the police before it can be used
to justify a search.  The information corroborated must provide a substantial
basis for crediting the informer's hearsay; corroboration of details that are
easily obtainable at the time the information is provided will not support a
finding of probable cause”).





[6]
But see Elardo v. State, 163 S.W.3d 760, 771-72 (Tex. App.–Texarkana
2005, pet. ref'd) (concluding that even if the magistrate could infer that the
anonymous tipster was a family member or friend, there were insufficient facts
to find that the tipster was merely a private citizen who could be held
accountable for his report).