# NO. 12-12-00041-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHRISTOPHER LEE ANDERSON,* *APPELLANT* | *§* | *APPEAL FROM THE 2ND* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Christopher Lee Anderson appeals his conviction of possession of between four and two hundred grams of cocaine with intent to deliver, for which he was sentenced to imprisonment for fifteen years. Appellant raises four issues on appeal. We affirm.

## BACKGROUND

Based on information received from a confidential informant, Jacksonville police officers Jeremy Pate and James Oden conducted surveillance of a house located at 1007 Pierce Lane in Jacksonville, Texas. The officers observed numerous different individuals entering the house and leaving after only a short period of time. Based on their experience, Pate and Oden suspected that illegal drugs were being sold at the house and obtained a search warrant for the premises and an arrest warrant for Appellant.[1] The Jacksonville Police Department SWAT team executed the "no knock" warrant. Appellant was the only person present in the house and was placed under arrest. As officers left the house with Appellant, he attempted to flee, but was apprehended after a short foot chase. During his search of the property, Pate found assorted

---

[1] These warrants are contained in a single document and will hereinafter be referred to as a singular warrant.

small plastic baggies, digital scales, a firearm, approximately $1,400 in cash, and over fifty-seven grams of cocaine.

Appellant was charged by indictment with possession of between four and two hundred grams of cocaine with intent to deliver and pleaded "not guilty." Appellant filed a motion to suppress the evidence seized from the house arguing that (1) the affidavit upon which the search warrant was based was improperly and illegally executed and (2) the search and seizure was illegal in that the search warrant was facially deficient because (a) it failed to specify the place to be searched and (b) it failed to particularize the things to be seized. The trial court denied Appellant's motion, and the matter proceeded to a jury trial. Ultimately, the jury found Appellant "guilty" as charged. Following a trial on punishment, the trial court sentenced Appellant to imprisonment for fifteen years. This appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant argues that the trial court erred in denying his motion to suppress. Appellant's motion to suppress was based on alleged deficiencies contained in Pate's search warrant affidavit. Pate's affidavit is included, in pertinent part, as an appendix to this opinion.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *State v. Elrod*, 395 S.W.3d 869, 876 (Tex. App.–Austin 2013, no pet.). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The trial court's ruling on the motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of its application of the law to those facts. *See Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. We afford almost total deference to the trial court's rulings on mixed questions of law and fact when

the resolution of those questions depends on an evaluation of credibility and demeanor. *See State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *Johnston*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89. All purely legal questions are reviewed de novo. *Johnston*, 336 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004).

At the suppression hearing, the trial court is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman*, 955 S.W.2d at 89. Unless the trial court abuses its discretion by making a finding that is unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *Johnston*, 336 S.W.3d at 657; *Guzman*, 955 S.W.2d at 89; *Elrod*, 395 S.W.3d at 876–77. When, as here, the trial court makes no findings of fact and conclusions of law, and none are requested, we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling so long as those findings are supported by the record. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche*, 10 S.W.3d at 328.

## Search Warrant Affidavit

No search warrant may issue unless a sworn affidavit is first presented to the magistrate setting forth sufficient facts to show that probable cause exists for its issuance. TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2012); *Elrod* 395 S.W.3d at 880–81. The sworn affidavit must set forth facts sufficient to establish probable cause that (1) a specific offense has been committed, (2) the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (West Supp. 2012). Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate, there is at least a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

3

When reviewing a decision by a judge or magistrate to issue a search warrant, we apply a deferential standard of review because of the constitutional preference for law enforcement officials to obtain warrants rather than conduct warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). The facts submitted for the magistrate's probable cause determination are those contained within the four corners of the affidavit and are to be read in a common sense and realistic manner. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). A magistrate may draw reasonable inferences from the facts stated in the affidavit. *Rodriguez*, 232 S.W.3d at 61; *Hedspeth v. State*, 249 S.W.3d 732, 737 (Tex. App.–Austin 2008, pet. ref'd). When in doubt about the propriety of the magistrate's conclusion, we defer to all reasonable inferences the magistrate could have made. *Rodriguez*, 232 S.W.3d at 61; *see McLain*, 337 S.W.3d at 271. Our inquiry, then, is whether there are sufficient facts stated within the four corners of the affidavit, coupled with inferences from those facts, to establish a fair probability that evidence of a particular crime will likely be found at a given location. *See Rodriguez*, 232 S.W.3d at 62.

### *Identity of Confidential Informant*

Appellant first argues that Pate's affidavit is deficient because paragraph 4 does not identify the "established informant," nor does it indicate that the informant specifically mentioned (CI 02-11) is one and the same as the "established informant." An unnamed informant's reliability may be established by the general assertions of the affiant, as stated in the affidavit, concerning the informant's prior reliability. *Capistran v. State*, 759 S.W.2d 121, 128 (Tex. Crim. App. 1982). Thus, as long as the prior reliability of the unnamed informant in this case is established, it is not necessary that he be identified. Moreover, it is apparent that CI 02-11 is the "established informant" referenced in paragraph 4. Paragraph 4 begins by setting forth that the affiant's knowledge is based on information provided to him by an "established confidential informant" that the suspected party is known to traffic cocaine. The very next sentence sets forth that CI 02-11 made a controlled purchase of cocaine from the suspected party. No other confidential informant is referenced in the affidavit. Therefore, we conclude that the magistrate, reading the affidavit in a common sense and realistic manner, could draw a reasonable inference that CI 02-11 is the "established informant" referenced in paragraph 4. *See McLain*, 337 S.W.3d at 271.

4

*"Controlled Purchase" and "Sizable Quantity"*

Appellant next argues that the affidavit does not define the terms "controlled purchase" and "sizable quantity" referenced in paragraph 4. We are mindful that we must not analyze the affidavit in a hypertechnical manner. *See State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). With regard to the term of art "controlled purchase," interpreting this term in a common sense and realistic manner, it is reasonable that the trial court could infer, without having the term defined for it in the affidavit, that CI 02-11 obtained cocaine in exchange for money while under Pate's direction or authority. *See id.*; *see also* THE AMERICAN HERITAGE DICTIONARY 319, 1005 (2d College ed. 1982) (defining "control" and "purchase"). Similarly, with regard to the term "sizable quantity," the trial court could reasonably infer that Pate intended to convey that CI 02-11 purchased a fairly large amount of cocaine. *Id.* at 1013, 1145 (defining "sizable" and "quantity").[2]

*Informant's Familiarity with Controlled Substances*

Appellant next contends that the affidavit fails to provide any documentation as to how it was determined that the substance alleged to have been purchased was, in fact, cocaine and fails to state that the informant was knowledgeable about cocaine. An affidavit in support of a warrant to search for narcotics need not provide more specific details about the informant's reliability than to state the informant provided information in the past regarding narcotics trafficking, which information had proved correct. *State v. Walker*, 140 S.W.3d 761, 766 (Tex. App.–Houston [14th Dist.] 2004, no pet.). Furthermore, because such a statement, when interpreted in a realistic and common sense manner, indicates the informant's familiarity with controlled substances, the affiant need provide no additional details to describe the informant's qualifications in recognizing drugs. *Id.* Here, Pate's affidavit described CI 02-11 as an "established confidential informant who has given true and reliable information on numerous occasions in the past." Therefore, it was not necessary to describe CI 02-11's qualifications in recognizing drugs. *See id.* CI 02-11's description of the substance he purchased and observed in the subject location is sufficient to permit the magistrate to conclude that the substance was what CI 02-11 conveyed to Pate that it was.

_____

[2] The precise amount of cocaine previously purchased by CI 02-11 is immaterial to our analysis on this issue.

*Connecting Appellant to the Residence*

Appellant next argues that the affidavit fails to state any determinative facts that the suspected residence was, in fact, the residence of Appellant. A police officer may enter a suspect's private residence to execute a felony arrest warrant provided he reasonably believes the suspect is home. **Green v. State**, 78 S.W.3d 604, 609 (Tex. App.–Fort Worth 2002, no pet.) (citing **Payton v. New York**, 445 U.S. 573, 602–03, 100 S. Ct. 1371, 1388, 63 L. Ed. 2d 639 (1980)). In the instant case, Pate stated in his affidavit that the house in question was in the charge of and controlled by Appellant. Pate further set forth that CI 02-11 made a controlled purchase of cocaine from Appellant at the house within the last twenty-four hours. Further still, Pate stated in his affidavit that he showed CI 02-11 a photographic lineup and that CI 02-11 identified a photograph of Appellant as the person who lives at the subject residence and from whom he bought cocaine at that residence. We conclude that the magistrate, reading the affidavit in a common sense and realistic manner, could draw a reasonable inference that Appellant resided at the subject property.

*"A Quantity of Cocaine Still at the Suspected Residence"*

Appellant next contends that the there are no facts or documentation to support CI 02-11's statement that Appellant "has a quantity of cocaine still at the suspected residence." We again stress that we must not analyze the affidavit in a hypertechnical manner. *See **McLain***, 337 S.W.3d at 271. Based on our reading of Pate's affidavit, we conclude that the magistrate, reading the affidavit in a common sense and realistic manner, could draw a reasonable inference that CI 02-11 observed a quantity of cocaine that remained in the residence following his controlled purchase of cocaine from Appellant.

*Reliability of Confidential Informant and Probable Cause*

Finally, Appellant argues that Pate did not know the informant well enough to express an opinion about the informant's character for truth and veracity. Appellant bases his contention on his examination of Pate at the hearing on his motion to suppress. Information received from an anonymous informer is no longer subject to a rigid two-pronged test for veracity and basis of knowledge. **State v. Davila**, 169 S.W.3d 735, 739 (Tex. App.–Austin 2005, no pet.) (citing **Illinois v. Gates**, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)). But it is, nevertheless, highly relevant in a totality of the circumstances analysis to consider what an affidavit reveals regarding the credibility of the informer, the reliability of the particular tip, and

the basis of the informer's knowledge. *Davila*, 169 S.W.3d at 739. These issues "usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.*

When an unnamed informant is relied upon in an affidavit for a search warrant, his credibility may be established by allegations that the informant has proven reliable on previous occasions. *Blake v. State*, 125 S.W.3d 717, 726 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (citing *Avery v. State*, 545 S.W.2d 803, 804 (Tex. Crim. App. 1977)). This reliability may be established by the general assertions of the affiant, as stated in the affidavit, concerning the informant's prior reliability. *Capistran*, 759 S.W.2d at 128; *Avery*, 545 S.W.2d at 804; *but see State v. Duarte*, 389 S.W.3d 349, 355 (Tex. Crim. App. 2012) (warrant affidavit based almost entirely on hearsay information supplied by first-time confidential informant did not establish probable cause necessary to support issuance of warrant to search defendant's residence).

Here, Pate stated in his affidavit that he received information from CI 02-11, an established confidential informant, who has given true and reliable information on numerous occasions in the past, that Appellant is known to traffic in illegal substances, namely cocaine. That information was based on the informant's having made a controlled purchase of cocaine at the subject property within twenty-four hours of Pate's making the affidavit. We conclude that Pate's statement in his affidavit is sufficient to support the reliability of this confidential informant. Moreover, based on Pate's affidavit, we further conclude that the facts asserted in the affidavit, coupled with reasonable inferences from those facts, establish a fair probability that evidence of the crime of delivery of cocaine was likely to be found at the stated location. *See Rodriguez*, 232 S.W.3d at 62. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress.

Appellant's first issue is overruled.

<u>**HEARSAY**</u>

In his second issue, Appellant argues that the trial court erred in overruling his hearsay objections to Pate's testimony concerning his discovery during his search of the property of a W-2 form and an Aaron's Rental receipt, both of which bore Appellant's name and the address of the subject property.

7

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Hearsay is not admissible except as provided by statute or the rules of evidence or other rules prescribed pursuant to statutory authority. TEX. R. EVID. 802. Erroneously admitting evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998)). In other words, an error in the admission of evidence is harmless if substantially the same evidence is admitted elsewhere without objection. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *Prieto v. State*, 337 S.W.3d 918, 922 (Tex. App.–Amarillo 2011, pet. ref'd). Therefore, "defense counsel must object every time allegedly inadmissible evidence is offered." *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984); *Thompson v. State*, No. 12-11-00091-CR, 2012 WL 3104272, at *2 (Tex. App.–Tyler July 31, 2012, no pet.) (mem. op., not designated for publication).

Here, Appellant's trial counsel objected when the State sought to elicit testimony from Pate concerning the W-2 and an Aaron's Rental receipt, both of which bore Appellant's name and the address of the subject property. The trial court overruled Appellant's objection. Subsequently, Pate again testified about his finding a W-2 with Appellant's address on it. Appellant failed to lodge an objection to this testimony until after the State had begun eliciting testimony from Pate concerning the amount of money he found at the residence.[3]

As a predicate to presenting a complaint on appeal that evidence was admitted in error, the complaining party must have preserved the error at trial by a proper request, objection, or motion stating the grounds for the ruling that the party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, and securing a ruling on the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a)(1)(A), (2); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). This request, objection, or motion must be timely; that is, the complaining party must have objected to the evidence, if possible, before it was actually admitted. *See Ethington*, 819 S.W.2d at 858. If not, an objection should be made to the evidence as soon as the ground for objection becomes apparent. *Lagrone v. State*, 942 S.W.2d

---

[3] Appellant objected that "to the extent [the State] is referring to documents that's not in evidence, and he is relating to whatever potential content there is[,] I object to that."

8

602, 618 (Tex. Crim. App. 1997). If a complaining party fails to object until after an objectionable question has been asked and answered, and the party can show no legitimate reason to justify the delay, the party's objection is untimely and any complaint about the admission of the evidence is waived. *Id.*; *Thompson*, 2012 WL 3104272, at *3.

In the case at hand, the State repeated its questioning of Pate concerning his discovery of Appellant's W-2 as follows:

> Q.   You said you found a - - was it a W-2, W-4?
> A.   I believe it was a W-2 I believe.
>
> Q.   You said you had found one of those with his address on there?
> A.   Yes, sir.
>
> Q.   Okay. Do you recall how much money you found at the time?
> A.   I believe it was approximately 1400 - -

Only at this point did Appellant object to Pate's testimony.

The grounds for Appellant's objection, whether based on hearsay or referring to documents not in evidence, were apparent when the prosecuting attorney asked Pate about Appellant's address being on the W-2. Moreover, there is no indication in the record that Appellant had any reason to justify delaying his objection to Pate's testimony. Accordingly, we hold that by his failure to continue to object each time the allegedly inadmissible evidence was offered with regard to his W-2, Appellant failed to preserve error. *See Hudson*, 675 S.W.2d at 511; *Thompson*, 2012 WL 3104272, at *2. Moreover, even if Pate's testimony that he discovered an Aaron's Rental receipt containing Appellant's name and the address of the subject property was improperly admitted, its admission did not harm Appellant since Pate later testified without objection that the W-2 bore the same information connecting Appellant to the subject property. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (any error in admitting hearsay evidence harmless in light of other properly admitted evidence proving same fact); *Rosales v. State*, 932 S.W.2d 530, 536 (Tex. App.–Tyler 1995, pet. ref'd). Appellant's second issue is overruled.

9

In his third and fourth issues, Appellant argues that the evidence is insufficient to support the jury's verdict.

## Standard of Review

The **Jackson v. Virginia**[4] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." ***Id.***

## Governing Law

To support Appellant's conviction for possession of cocaine with intent to deliver, the State was required to prove, among other things, that Appellant exercised control, management, or care over the cocaine. *See, e.g., **Poindexter v. State***, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The State must establish, to the requisite level of confidence, that the accused's connection with the contraband was more than just fortuitous. *See **id.*** at 406. When the accused

---

[4] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

was not in exclusive possession of the place where the contraband was found, we cannot conclude that he had knowledge of and control over the contraband unless there are additional independent facts and circumstances which link the accused to the contraband. *Id.* Links that may circumstantially establish the sufficiency of the evidence to prove that a defendant had knowing "possession" of contraband include the following: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant possessed other contraband when arrested; (5) whether the defendant made incriminating statements when arrested; (6) whether the defendant attempted to flee; (7) whether the defendant made furtive gestures; (8) whether other contraband was present; (9) whether the defendant owned or had the right to possess the place where the contraband was found; (10) whether the place where the contraband was found was enclosed; and (11) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans*, 202 S.W.3d at 162 n.12. It is not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial. *Id.* Ultimately, the question of whether the evidence is sufficient to link the appellant to the contraband must be answered on a case by case basis. *See Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.–Austin 1991, pet. ref'd).

Intent to deliver a controlled substance may be proved by circumstantial evidence, including evidence surrounding its possession. *See Guy v. State*, 160 S.W.3d 606, 613 (Tex. App.–Fort Worth 2005, pet. ref'd); *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.–Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997). Additionally, intent to deliver may be inferred from the quantity of drugs possessed and from the manner in which they are packaged. *Guy*, 160 S.W.3d at 613. Courts have considered several factors in determining such intent, including the following: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. *Id* at 613–14.

### Evidence Supporting Appellant's Conviction

In the instant case, Pate testified that he and Oden conducted surveillance of the location in question and observed numerous persons stopping at the residence and leaving after a short

11

period of time. Pate further testified that this indicated narcotics sales were occurring at the residence. Pate stated that based on his observations, he obtained a "no knock" search warrant for the location and an arrest warrant for Appellant. Pate further stated that the warrants were executed at the location by the SWAT team while he performed perimeter security duties. Pate testified that Appellant was the only occupant located at the residence and was placed under arrest. Pate further testified that he approached the residence to conduct his search, at which point he observed Appellant being chased by other officers. Pate stated that during his search, he found small plastic baggies of a type used to package narcotics for sale, digital scales used to measure the weights of drugs sold, and a large amount of cash. Pate further stated that he found a large amount of cocaine, a firearm, and a W-2 form and Aaron's Rentals receipt, both of which bore Appellant's name and the address of the subject property. Finally, Pate testified that the street value for one gram of crack cocaine is one hundred dollars.

Oden testified that he and Pate conducted surveillance on the residence in question. Oden further testified that he observed numerous vehicles making brief stops at the location. He stated that he considered this to be suspicious behavior indicative of narcotics sales.

Jacksonville Police Sergeant Daniel Franklin testified that he was the commander of the department's SWAT team. Franklin further testified that the SWAT team deployed to aid in the execution of a search warrant at the subject property. Franklin stated that Appellant was the only individual present at the scene when he and the SWAT team entered the residence, and that Appellant was standing near the doorway of a bedroom. Franklin further stated that when Appellant was taken out of the residence, he broke free from officers and ran. Franklin testified that Appellant was again apprehended after a short foot chase.

Chance Cline, a forensic scientist for the Texas Department of Public Safety testified that he tested the substance recovered from the residence and determined that it was "cocaine base" or "crack cocaine." Cline further testified that the weight of the substance recovered was 57.18 grams.

In sum, Pate and Oden observed suspicious activity at the residence indicating to each of them that narcotics trafficking was being conducted. Appellant was the only person present when police executed the warrant and had access to the cocaine recovered. Appellant attempted to flee after he was placed under arrest. Digital scales, plastic baggies, and a large amount of cash were also discovered in the house. Moreover, a firearm and cocaine with a street value of

more than five thousand dollars was discovered, in part, in an enclosed place, a bread box.[5]  Pate testified that based on the items he discovered during his search, he believed that illegal narcotics sales had been going on in the residence.  Finally, the W-2 and rental receipt link Appellant to the residence, which could cause a reasonable jury to conclude that Appellant was present there during the period of time the officers observed activity indicative of narcotics trafficking.  Having examining the aforementioned evidence in the light most favorable to the verdict, we hold that the evidence is sufficient to support that Appellant possessed the cocaine at issue with intent to deliver.  Appellant's third and fourth issues are overruled.

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues, we ***affirm*** the trial court's judgment.

SAM GRIFFITH
Justice


Opinion delivered October 16, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[5] A portion of the cocaine recovered was located in a bread box in the kitchen.  The bulk of the cocaine recovered was located in a bedroom on a dresser.

# APPENDIX



DEFENDANT'S
EXHIBIT

/

THE STATE OF TEXAS      §      DOCKET # J 2011-1-30

COUNTY OF CHEROKEE      §      COURT: Jacksonville Municipal

### AFFIDAVIT FOR SEARCH WARRANT and ARREST WARRANT
{Article 18.02(7 & 9) and 18.03, Texas Code of Criminal Procedure}

BEFORE ME, THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED THE AFFIANT HEREIN, A PEACE OFFICER UNDER THE LAWS OF TEXAS, WHO, BEING DULY SWORN, ON OATH MADE THE FOLLOWING STATEMENTS:

My name is Jeremy Pate and I am commissioned as a peace officer by the City of Jacksonville Police Department.

1. There is in Cherokee County, Texas, a suspected place and premises described and located as follows:

In the city of Jacksonville, Tx, 1007 Pierce Ln. Said suspected place is a single story residence located on the south side of the roadway. The residence is constructed primarily of tan brick. The roof is compiled primarily brown composite shingles. On the north side of the residence is a front door, which is apparently the front of the house. On the west side of the residence is a carport. The back yard is open and not fenced in. I know this house to be 1007 Pierce Ln because I have responded to calls at this residence while performing my duties as a Police Officer in the past. Said suspected place, in addition to the foregoing description, also includes all other buildings, structures, places and vehicles on said premises and within the curtilage, if said premises is a residence, which are found to be under the control of the suspected party named below and in, on, or around which said suspected party may reasonably reposit or secrete property which is the object of the search requested herein. Attached hereto as Exhibit "A" is a photo of the suspected place to be searched; it is to be considered as part of this affidavit as if written herein.

Said suspected place is located by proceeding north bound on HWY 69 to HWY 135. Travel east bound on HWY off of HWY 69. Travel east bound on HWY 135 to Pierce LN. Travel east bound on Pierce Ln to the first house on the right side, south side, of the roadway that face Pierce Ln. This house will be the suspected residence.

2. Said suspected place is in the charge of and controlled by each of the following named and/or described suspected parties (hereafter called "suspected party," whether one or more), to wit: **Christopher Lee Anderson described as a black male approximate age 27 years of age and height 6-01" weight 145 lbs with black hair.**

3. It is the belief of affiant that said suspected party has possession of and is concealing at said suspected place the following property: **Cocaine, an illegal narcotic substance as described in the Health and Safety Code.**

4. Affiant has probable cause for said belief by reason of the following facts and circumstances: Affiant was advised by an established confidential informant who has given true and reliable information on numerous occasions in the past that the suspected party is known to traffic in illegal substances to wit: cocaine. The CI 02-11 stated that due to the CI 02-11 personally making a controlled purchase of a sizable quantity of cocaine from the suspected party at the suspected residence at 1007 Pierce Ln. within the last 24 hours the suspected party was in possession of cocaine at the suspected place. The CI 02-11 personally made contact with the suspected party and purchased a sizable quantity of cocaine from the suspected party that was being kept at suspected party's residence at 1007 Pierce LN. Affiant was aware when the CI 02-11 made the cocaine purchase from the

SCANNED

suspected party. CI 02-11 stated that the suspected party does have a quantity of cocaine still at the suspected residence. On Friday 01-14-2011 I made contact with CI 02-11. I advised CI 02-11 I wanted to show him a sequential photo lineup. I read CI 02-11 the photo lineup identifications instructions form and informed CI 02-11 that the person who committed the crime may or may not be in the lineup. CI 02-11 stated that he understood and I began to show him the sequential photo lineup. I showed CI 02-11 each photo, one at a time in the order indicated on the photo sequence form. When I showed the photo of the photo of Christopher Anderson, CI 02-11 immediately stated that it was Anderson. CI 02-11 said that photo number 4 was the person that lives at 1007 Pierce Ln. and is who he has bought cocaine from at that residence and who he knows to be Christopher Anderson. I continued and showed CI 02-11 the remaining photos in the lineup. CI 02-11 informed me that he was 100% positive that photo number 4 was the person that he bought the cocaine from. This was CI 02-11's own words describing how sure he was of the identification. I did not request CI 02-11 to describe in any way particular how he felt about the identification. I requested CI 02-11 sign the lineup identification instructions form and to indicate on the form which photo he identified and how he knows the person in the photo. CI 02-11 did sign and complete the form. I retained the photos used in the lineup and the identification instructions form as well as the photo sequence form indicating in which order the photos were shown. Photo number 4 in which CI 02-11 made an identification is the photo of Christopher Anderson.

5. Affiant has good reason to believe, does believe, and hereby charges and accuses that on or about the 14th day of January , 2011, in Cherokee County, Texas, the suspected party committed an offense against the laws of the State of Texas, to wit:  Delivery of a Controlled Substance PG 1 1g<>4g: On the 14th day of January, 2011 and at 1007 Pierce Ln the suspected party did then and there intentionally or knowingly deliver, by actual transfer to CI 02-11, a controlled substance, namely: cocaine in an amount of one gram or more but less than four grams.

6. Affiant requests authorization to enter the suspected place and premises without first knocking and announcing the presence and purpose of officers executing the warrant sought herein. As probable cause to believe that such knocking and announcing would be dangerous, futile, or would inhibit the effective investigation of the offense described in this Affidavit, affiant submits the following facts and circumstances: Based on affiants experience in narcotics law enforcement, affiant knows that the methods employed by the suspected party as described by the reliable source are common practices used for trafficking in contraband. Not only does this information increase the likelihood that illicit substances are present at the suspected place, but also that timely entrance into the suspected place will be difficult.  Officers executing the warrant requested herein will be required to employ special procedures designed to gain instant control of the individuals at the suspected place for the safety of all present and the preservation of property sought as evidence by the warrant. These procedures are necessarily inconsistent with the traditional knocking and announcing of presence and purpose by officers executing a warrant on such premises. Otherwise, the probability of success during the search will be substantially diminished. Wherefore, affiant askes for issuance of a warrant that will authorize affiant and other peace officers to search said suspected place and premises for the property described

above and seize same, and to arrest and search each suspected party named and described herein and others unknown to affiant found to be occupants of and in control of said premises.

_____
Affiant

SWORN TO AND SUBSCRIBED BEFORE ME BY SAID AFFIANT ON THIS THE 14 DAY OF January , 2011.

_____
MAGISTRATE, CHEROKEE COUNTY, TEXAS



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 16, 2013

### NO. 12-12-00041-CR

**CHRISTOPHER LEE ANDERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 2nd District Court

of Cherokee County, Texas (Tr.Ct.No. 18035)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*