**Opinion issued January 23, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01111-CR

## NO. 01-12-01112-CR

———————————

**JOSHUA MATTHEW FLORES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1342935 & 1342936**

---

## MEMORANDUM OPINION

After the trial court denied his motion to suppress evidence, appellant,

Joshua Matthew Flores, pleaded guilty to the third-degree felony offenses of

possession of between one and four grams of a controlled substance, cocaine,[1] and unlawful possession of a firearm by a felon.[2] Based upon an agreed recommendation on punishment, the trial court sentenced appellant to two years' confinement for each offense, to run concurrently.[3] In two issues, appellant contends that the trial court erroneously denied his motion to suppress the contraband and a firearm found during the search of his residence because the probable-cause affidavit did not state sufficient facts to support the affiant's belief that contraband could be found at appellant's residence.

We affirm.

## Background

On April 5, 2012, Houston Police Department Officer A. Duncan applied for a warrant to search appellant's residence for drugs and drug paraphernalia. The probable-cause affidavit physically described both appellant and his residence, and Officer Duncan stated his belief that cocaine and marijuana could be located on the premises. As support, he averred as follows:

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon 2010) (providing that cocaine is penalty group one substance); *id.* § 481.115(c) (Vernon 2010) (providing that possession of between one and four grams of penalty group one substance is third-degree felony).

[2] *See* TEX. PENAL CODE ANN. § 46.04(a) (Vernon 2011).

[3] The possession of a controlled substance offense was tried in trial court cause number 1342935 and resulted in appellate cause number 01-12-01111-CR. The unlawful possession of a firearm offense was tried in trial court cause number 1342936 and resulted in appellate cause number 01-12-01112-CR.

2

Your affiant, A.B. Duncan, a City of Houston Police Officer, is currently assigned to the Special Investigations Command, Narcotics division, as a Field Case agent in Squad #5.

Your affiant met with a confidential informant who has been used in the past and the information given by the informant has proven to be credible and reliable and has lead to felony arrest. Your affiant drove the confidential informant to [Flores's address] and he/she pointed to the above described home and told your affiant that Joshua Flores who lives at the home sells large quantities of cocaine. The confidential informant also told your affiant that he/she has seen large quantities of cocaine in the home on several occasions. The confidential informant further told affiant that Joshua Flores uses a white Toyota Camry to deliver cocaine to other dealers in and around Houston.

Your affiant then researched Joshua Flores and discovered since 1999 he has multiple arrests including one arrest for possession of marijuana. Your affiant further researched [the address] and the white Toyota Camry driven by Joshua Flores. Your affiant discovered that Joshua Flores owns a white 2007 Toyota Camry . . . and had an original purchase price of $30,000.00. The home . . . is owned by Joshua Flores according to Harris County Appraisal District and is valued at $170,000.00. Your affiant checked Joshua Flores through the Texas Work Force Commission and discovered that no source of employment has been reported since 2004.

On February 20, 2012 your affiant and other officers assigned to squad #5 began surveillance on Joshua Flores at [his residence]. Affiant conducted surveillance for several days. During the surveillance your affiant watched as Joshua Flores on multiple occasions would exit his garage driving the above described Toyota Camry and drive to different homes in and around Houston. While at these different homes Joshua Flores would walk inside only staying for less than five minutes and would then return to [his] home parking the above described vehicle in the garage and shutting the door. Based on your affiants experience this type of activity is consistent with narcotics trafficking.

On February 23, 2012 while conducting surveillance at [Flores's residence] your affiant watched as Joshua Flores exited his garage driving the white Toyota Camry at approximately 3:00pm. Your affiant then watched as Joshua Flores drove directly to a gas station located at West Road at Jackrabbit Road and parked in a space without making any other stops. A short time late he met with a Hispanic male later identified as Mr. Noel Mendoza. Your affiant watched as Noel Mendoza handed Joshua Flores money. Joshua Flores then handed Noel Mendoza a clear plastic bag containing a white powder substance. Your affiant then watched as Joshua Flores drove back to [his residence] and parked in the garage. Officer R. Dabila and J. Walker were able to follow Noel Mendoza and had him stopped by a marked patrol unit. Mr. Noel Mendoza was found to be in possession of cocaine and was arrested and charged. Mr. Noel Mendoza then gave affiant the following written statement, "I met with Joshua who drives a white Toyota Camry at West Road at the [S]hell station. Joshua sold me $200.00 dollars worth of cocaine; he has it every time I call."

On April 4, 2012 while conducting surveillance at [Flores's residence] your affiant watched as Joshua Flores exited his garage driving the white Toyota Camry at approximately 4:15pm. Officers J. Walker, R. Dabila and affiant followed Mr. Flores and watched as he drove to Jones Road at West Road and parked in a Sears's parking lot. A short time later a gray Toyota Tundra pulled up and a white male later identified as Mr. David Copeland exited the car and met with Joshua Flores who was sitting in the drivers' seat of the white Toyota Camry. Affiant watched as Mr. David Copeland handed Joshua Flores money. Affiant then watched as Joshua Flores handed Mr. David Copeland a clear plastic bag containing a white powder substance which David Copeland placed in his left front pocket. Affiant further watched as Joshua Flores handed David Copeland a clear plastic bag which contained a green leafy substance. Mr. David Copeland then got back into his vehicle and drove out of the parking lot. Mr. David Copeland was stopped [in] traffic by a marked patrol unit and was found to be in possession of a large quantity of cocaine and marijuana. Mr. David Copeland told officers that the drugs were not his and they belonged to the passenger in the car Mr. Samuel Amspoker. Officer J. Walker and affiant met with Mr. Samuel Amspoker and he gave the following written statement, "Today my friend and me met with somebody

4

named Josh at the Sears at Jones Road and West Road. Josh gave David the weed and the powder. Josh was driving a white car."

Based on the fact that a confidential information told affiant that he/she has seen large quantities [of] cocaine on several occasions at [Flores's residence], the activities of Joshua Flores that are consistent with narcotics trafficking and the two arrests described in this affidavit. Your affiant believes there is additional cocaine and marijuana in the home at [Flores's address].

The magistrate issued the search warrant on April 5, 2012.

Later that day, Officer Duncan again conducted surveillance on appellant's house. At one point, appellant got in his car and drove away from his house. Officer Duncan stopped appellant after he witnessed him commit two traffic violations. Officer Duncan then conducted a search of appellant's residence pursuant to the search warrant. He discovered 2.51 grams of cocaine, 124 grams of marijuana, and a firearm located in plain view inside the residence.

Appellant moved to suppress both the contraband and the firearm discovered during the search of his house, arguing, among other things, that the probable-cause affidavit was not sufficient to support Officer Duncan's belief that contraband would be present in the residence at the time of the search. After a hearing at which Officer Duncan testified, the trial court denied appellant's motion to suppress. The trial court issued findings of fact and conclusions of law, concluding, among other things, that the contraband was "lawfully seized pursuant to a lawfully-obtained search warrant," that the probable-cause affidavit was

5

sufficient to support the issuance of the search warrant, and that the magistrate "was presented with a substantial basis for concluding that probable cause existed" to support the issuance of the warrant.

Appellant subsequently pleaded guilty to the offense of possession of between one and four grams of a controlled substance and the offense of unlawful possession of a firearm by a felon. Based upon an agreed recommendation as to punishment, the trial court assessed appellant's punishment at two years' confinement for both offenses, to run concurrently. The trial court certified appellant's right to appeal the denial of his motion to suppress, and this appeal followed.

## Sufficiency of Probable-Cause Affidavit

In his two issues on appeal, appellant contends that the trial court erroneously denied his motion to suppress evidence because the probable-cause affidavit did not state sufficient facts to support Officer Duncan's belief that contraband could be found at appellant's residence.

### A. Standard of Review

When reviewing a trial court's ruling on a motion to suppress evidence, we normally use a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Under this standard, we defer to the trial court's determination of historical facts but review de novo the application of the law to

6

the facts. *Id.* However, when the question before the trial court is whether probable cause supported the issuance of a search warrant, the trial court does not make credibility determinations but is instead "constrained to the four corners of the affidavit." *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011) (citing *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004)). Thus, when we review a magistrate's decision to issue a warrant, "we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search." *Id.* (citing *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004)). We will uphold the magistrate's probable cause determination as long as the magistrate had a substantial basis for concluding that probable cause existed. *Id.*; *see also Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) ("[T]he traditional standard of review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.") (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960)).

We do not analyze probable-cause affidavits in a hyper-technical manner. *See McLain*, 337 S.W.3d at 271 (citing *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331). Instead, we interpret the affidavit in a "commonsensical and realistic manner,

7

recognizing that the magistrate may draw reasonable inferences." *Id.* We do not focus on information that is not contained within the probable-cause affidavit; rather, we focus on the "combined logical force of facts that *are* in the affidavit." *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007) (emphasis in original). When in doubt, we defer to all reasonable inferences that the magistrate could have made when considering the affidavit. *McLain*, 337 S.W.3d at 271; *see also Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) ("'[T]he magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review.'") (quoting *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).

To justify the issuance of a search warrant, the affidavit must set forth facts sufficient to establish probable cause that (1) a specific offense has been committed; (2) the specifically described property or items to be searched for or seized constitute evidence of that offense; and (3) the property or items constituting such evidence are located at the particular place to be searched. TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon Supp. 2013); *McKissick v. State*, 209 S.W.3d 205, 211 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We determine whether the facts alleged in the probable-cause affidavit sufficiently support a search warrant by examining the totality of the circumstances. *State v. Griggs*, 352 S.W.3d 297, 301 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

8

Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usually, reduced to a set of neat legal rules." *Rodriguez*, 232 S.W.3d at 64 (quoting *Gates*, 462 U.S. at 232, 103 S. Ct. at 2329). A search warrant is supported by probable cause when the facts set out within the "four corners" of the affidavit are "sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

### B. Validity of Probable-Cause Affidavit

In his first issue, appellant challenges the trial court's denial of his motion to suppress the cocaine recovered from his house.

On appeal, appellant, as he did at the suppression hearing, isolates portions of the probable-cause affidavit, attacks each portion by arguing that the facts stated in the particular portion of the affidavit do not justify a probable cause finding, and then concludes that because none of the facts when viewed in isolation support probable cause, the affidavit as a whole does not support the magistrate's determination that probable cause existed to believe that appellant possessed contraband at his residence.

Appellant ignores the fact that, in reviewing a magistrate's determination as to the adequacy of the probable-cause affidavit, we do not examine each piece of

9

evidence presented to the magistrate in the affidavit in isolation, such that, if the pieces of evidence do not, standing alone, support probable cause, the entire affidavit fails. Instead, we review the totality of the facts and circumstances presented to the magistrate in the probable-cause affidavit in a "commonsensical and realistic manner," while deferring to reasonable inferences that the magistrate could have made, to determine whether the magistrate had a substantial basis for concluding that probable cause existed. *See McLain*, 337 S.W.3d at 271; *Davis*, 202 S.W.3d at 156 ("Under the Fourth Amendment, an affidavit is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed.").

Here, the probable-cause affidavit reflected that Officer Duncan's investigation began when he received a tip from an unnamed confidential informant, in which the informant accompanied Duncan to appellant's house, identified appellant as a resident of the house, identified appellant as a seller of "large quantities of cocaine," stated that he had seen "large quantities of cocaine in the home on several occasions," and related that appellant used a white Toyota Camry to make cocaine deliveries around Houston. Officer Duncan then researched appellant and discovered, among other things, that he has one prior drug-related arrest and that he owns a white Toyota Camry.

10

Officer Duncan then began surveillance on appellant on February 20, 2012. Three days after beginning surveillance, Officer Duncan watched appellant leave his house in his white Camry, which had been parked inside the garage, and drive directly to a gas station on West Road and park in the parking lot. Officer Duncan observed appellant meet with another man, Noel Mendoza, and engage in a transaction in which appellant handed Mendoza a "clear plastic bag containing a white powder substance" and Mendoza handed appellant money. Officer Duncan followed appellant back to his house, where he parked his car in his garage. Officers Dabila and Walker followed, and later stopped, Mendoza. Mendoza had cocaine in his possession. In a written statement, he told Officer Duncan, "I met with Joshua who drives a white Toyota Camry at West Road at the [S]hell station. Joshua sold me $200.00 dollars worth of cocaine; he has it every time I call."

Approximately six weeks later, on April 4, 2012, Officer Duncan again conducted surveillance of appellant's residence. Appellant again left his garage driving his white Camry and drove to a Sears store, also located on West Road. Appellant again parked in the parking lot and waited for another vehicle to arrive. Shortly thereafter, David Copeland and Samuel Amspoker pulled up to where appellant was waiting. Copeland walked over to appellant's car, and officers watched as Copeland handed appellant money, and appellant handed Copeland two clear plastic bags, one containing a white powder substance and one containing a

11

green leafy substance. Copeland then returned to his vehicle and left the parking lot. Officers later stopped him for a traffic violation, and officers determined that Copeland was "in possession of a large quantity of cocaine and marijuana." Amspoker met with Officer Duncan and stated, in writing, "Today my friend and me met with somebody named Josh at the Sears at Jones Road and West Road. Josh gave David the weed and the powder. Josh was driving a white car." The following day, April 5, 2012, Officer Duncan prepared the probable-cause affidavit containing the preceding facts and presented it to a magistrate, who issued a warrant authorizing the search of appellant's residence.

The probable-cause affidavit thus established that, after receiving information that appellant sold narcotics and had possessed narcotics at his home on prior occasions, Officer Duncan confirmed the informant's information concerning the appellant's ownership of the residence and type of vehicle he drove and began surveillance of appellant. On two occasions approximately six weeks apart, Officer Duncan watched appellant leave his house in his car, drive to a local parking lot, wait for another vehicle to arrive, and then engage in a drug transaction before returning home. Officers confirmed that the purchasers bought cocaine and marijuana from appellant, and one of the purchasers, Mendoza, indicated that he had an ongoing arrangement with appellant, in which appellant sold him cocaine "every time [he] call[ed]."

12

At the suppression hearing, Officer Duncan agreed with defense counsel that he was not trying to tell the trial court that appellant had an "ongoing drug dealing business" during the period in between the February 23 transaction and the April 4 transaction, a period of time about which the affidavit contained no information. However, we do not consider testimony given at the suppression hearing when reviewing the sufficiency of a probable cause affidavit. *See Blake v. State*, 125 S.W.3d 717, 723 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("Statements made during a motion to suppress hearing do not factor into the probable cause determination; rather, we examine only the four corners of the affidavit to determine whether probable cause exists."). Instead, we solely consider the information presented within the four corners of the affidavit, and, when we do so, we conclude that the magistrate could have reasonably concluded based on the totality of information that appellant sold cocaine on a continuing basis. The magistrate also could have reasonably inferred from the facts presented in the probable-cause affidavit that, in operating his drug business, appellant kept his drug supply in his house, electing to drive to his buyers to deliver the contraband rather than inviting drug users and other dealers to his house to conduct transactions. *See McLain*, 337 S.W.3d at 272 ("When in doubt, the appellate court should defer to all reasonable inferences that the magistrate could have made."); *Rodriguez*, 232 S.W.3d at 64 ("And, although it is entirely possible that Cantu took

all of the cocaine stored at the Goddard Street garage with him when he left, it is at least as likely that the three kilo package was just a small part of the whole cache."). Furthermore, the magistrate also could have reasonably inferred that, in conducting these transactions, appellant carried only the amount of contraband needed for the particular transaction with him instead of leaving his entire drug supply in his car, an inherently mobile location with significantly less privacy than his house. *See, e.g.*, *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S. Ct. 3092, 3096 (1976) ("The expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel."); *Keehn v. State*, 279 S.W.3d 330, 336 (Tex. Crim. App. 2009) (noting that Fourth Amendment jurisprudence "recognizes that individuals possess a greater privacy interest in a fixed residence" as opposed to motor home or regular vehicle).

We conclude that when we view all of the facts presented in the probable-cause affidavit in the totality instead of in isolation, as we must when reviewing the sufficiency of a probable cause affidavit, the magistrate had a substantial basis for concluding that probable cause existed that contraband was present at appellant's house. *See McLain*, 337 S.W.3d at 271; *Rodriguez*, 232 S.W.3d at 62 (stating that we do not focus on information not contained in probable-cause affidavit but rather on "combined logical force of facts that *are* in the affidavit"); *Davis*, 202 S.W.3d at 154 (stating that search warrant is supported by probable cause if facts in

14

affidavit are "sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued"). We therefore hold that the trial court correctly denied appellant's motion to suppress evidence.

Appellant argues, however, that the affidavit failed to establish the confidential informant's reliability, which renders the tip unhelpful for determining probable cause. We observe that Officer Duncan relied on the informant's information to kick off his investigation. Officer Duncan then conducted surveillance on appellant for approximately six weeks before seeking a search warrant, during which time he witnessed appellant leave his home and immediately conduct two drug transactions before returning home. Information provided by an informant "must contain some indicia of reliability *or be reasonably corroborated by police* before it can be used to justify a search." *Blake*, 125 S.W.3d at 727 (emphasis added); *see also Gates*, 462 U.S. at 230, 103 S. Ct. at 2328 (holding that informant's veracity, reliability, and basis of knowledge "are all highly relevant in determining the value of his report" but that these elements are not "entirely separate and independent requirements to be rigidly exacted in every case"; instead, they are "closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether probable cause exists); *Elardo v. State*, 163 S.W.3d 760, 767 (Tex. App.—Texarkana 2005, pet. ref'd) ("The police

15

can provide other indicia of reliability by independent corroboration of the informant's information."); *State v. Walker*, 140 S.W.3d 761, 766 (Tex. App.— Houston [14th Dist.] 2004, no pet.) ("In the affidavit, however, Miller does not rely solely on the confidential informant's information to show there was cocaine in Walker's residence. Instead, Miller relies on his own and other officers' observations during their surveillance of Baker while he was at Walker's residence and during the subsequent traffic stop."). Here, the informant's tip was reasonably corroborated by the surveillance done by police. Moreover, it was not the only evidence contained in the probable-cause affidavit that supported the conclusion that drugs could be found in appellant's residence.

Appellant also argues that the February 23 transaction—as well as the informant's tip, which did not establish when the informant had seen cocaine in appellant's house—is stale and does not support the issuance of a warrant. To justify a finding that the probable-cause affidavit is sufficient to support the search warrant, the facts set out in the affidavit must not have become stale when the magistrate issues the warrant. *McKissick*, 209 S.W.3d at 214. Probable cause ceases to exist when, at the time the magistrate issues the search warrant, it would be unreasonable to presume the items still remain at the suspected place. *Id.* The proper method for determining whether supporting facts have become stale is to examine, in light of the criminal activity involved, the time elapsing between the

occurrence of the events set out in the affidavit and the time the magistrate issues the warrant. *Id.* "When the affidavit recites facts indicating activity of a protracted and continuous nature—*i.e.*, a course of conduct—the passage of time becomes less significant." *Id.*; *see also Jones*, 364 S.W.3d at 860 ("We have suggested that time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence.") (citing *McLain*, 337 S.W.3d at 273–74).

Here, the February 23 transaction primarily corroborated the informant's tip. Moreover, although the affidavit did not specify when the informant observed cocaine in appellant's residence and the officers observed appellant engage in a drug transaction on February 23, approximately six weeks before issuance of the warrant, officers also observed appellant engage in a drug transaction on April 4, the day before Officer Duncan sought a warrant from the magistrate, and this transaction was remarkably similar to the February 23 transaction. The affidavit also reflected that Mendoza told Officer Duncan on February 23 that appellant has cocaine for him "every time [he] call[s]." The magistrate could have reasonably concluded that the facts described in the probable-cause affidavit indicated that appellant's drug operation "was of a continuous and protracted nature, making the passage of time between this activity and appellant's arrest less relevant." *See*

*McKissick*, 209 S.W.3d at 215.  Thus, the affidavit was not insufficient to support the probable cause determination due to staleness.[4]

We overrule appellant's first issue.

### C. Failure to Suppress Firearm

In his second issue, appellant argues that the trial court erred in failing to suppress the firearm that was found when the officers executed the search warrant, which did not mention a firearm.  Appellant argues that "the firearm was discovered only because of the execution of the search warrant" and that "the admissibility of the firearm as evidence stands or falls with the question of the legality of the search."

We have concluded that the search warrant authorizing the search of appellant's home was valid.  The officers were, therefore, lawfully where the contraband could be viewed and seized.  Appellant raises no independent argument

---

[4] Appellant also argues that the search of his house could not be supported by the search incident to arrest doctrine because he was arrested away from his house. Because we have held that the search warrant was valid, we need not address this argument.  Furthermore, although appellant states that his arrest for committing two traffic violations was "an obvious sham" and "a 'pretext' arrest" he also acknowledges that "[t]he pretextual character of an arrest does not render it illegal." *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) ("[A]s long as the facts and circumstances show a valid and legal detention, it serves no actual Fourth Amendment function to attempt to unearth the subjective reasons for such detention."); *Overshown v. State*, 329 S.W.3d 201, 205 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[P]olice may validly stop a vehicle for a traffic violation so long as the stop would be objectively reasonable, regardless of whether the stop is a mere pretext to investigate unrelated criminal conduct."). Appellant makes no further argument concerning whether his arrest was valid.

for why the trial court should have granted the motion to suppress the firearm. *See, e.g., State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013) ("[S]eizing contraband in plain view does not run afoul of the Fourth Amendment."); *Keehn*, 279 S.W.3d at 334 (stating that plain-view doctrine is satisfied if officers are lawfully where object can be "plainly viewed," incriminating character of object is immediately apparent, and officers have right to access object); *see also* TEX. R. APP. P. 38.1(i) (requiring briefing and authority for preservation of error).

We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).